**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF OREGON

**ELIZABETH L. PERRIS**  
CHIEF BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700  
PORTLAND, OREGON 97204  
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK  
MARGOT LUTZENHISER, LAW CLERK

October 24, 2007

Joseph Field  
Field Jerger LLP  
610 SW Alder St., Ste. 910  
Portland, OR  97205

Paul R. Bocci, Jr.  
385 First St., Ste. 215  
Lake Oswego, OR  97034

    Re: <u>O'Hagan v. Von Borstel</u>, Adv. No. 03-3523  
         Ruling on Phase 3 of Trial

Dear Counsel:

    The third phase of the trial in this adversary proceeding for an accounting and division of partnership assets was held on October 17, 2007. The purpose of the Phase 3 trial was to determine, as of December 10, 2001, the value of the real property known as the Home Place, which I earlier determined was partnership property. For the reasons that follow, I conclude that the value as of that date, after deducting costs of sale, was $313,500. Plaintiff is entitled to one-half of that value.

    The only evidence of the value of the Home Place presented at the trial was the appraisal by and testimony of Lester Cordill. Cordill applied three appraisal approaches: the cost approach, the sales comparison approach, and the income approach. In his opinion, the sales comparison approach provided the most reliable value. Using that approach, in his opinion the value of the Home Place as of January 1, 2002[1] was $330,000.

    Defendant did not challenge the qualifications of Cordill, who I find was a very well-qualified appraiser. Instead, defendant argued that the value of the property should be reduced from Cordill's appraisal by (1) 10 percent due to conditions on the property that defendant argues were not taken into account in

---

[1] The parties do not dispute that a January 1, 2002, appraisal date is appropriate to determine the value as of December 10, 2001.

the appraisal; (2) $10,000 for septic problems; and (3) 8 percent for the costs of sale.

As for the first argument, defendant pointed out certain conditions on the property that he argued showed that Cordill had not done a thorough inspection of the property and that should cause a 10 percent reduction in the property's value. In particular, he provided testimony that there had been a flash flood through the house in the early 1960s, evidence of which could be seen in the unfinished basement of the house. He established that the insulation in the residence was inadequate. Finally, he provided evidence that there was an elevated fuel storage facility and 55-gallon drums on the property, which likely contained some sort of chemicals or fuel oil.

I will not deduct anything from the appraised value of the house based on these conditions. First, Cordill either took them into consideration in making the appraisal he did or testified that the conditions would not make a difference in his opinion about price. For example, as to the lack of insulation, he testified that he took those conditions into account in determining the effective age of the house. As for the evidence of a flood, Cordill testified that he was told by defendant during the inspection of the property that the water marks in the basement were caused by flooding when the electricity went out and the sump pumps did not operate. Defendant's testimony at trial that the marks resulted from a flash flood in the early 1960s lacks credibility, in light of the explanation he gave to Cordill for the same condition. Whatever the cause of the water damage, Cordill testified that he took the flood damage into account in making the appraisal.

The most potentially troubling condition was the elevated fuel storage facility and the 55-gallon drums that were on the property. Cordill's appraisal summary says that he "observed no evidence of toxic or hazardous substances on the farm property." Exhibit 1 at 9. Defendant provided photographs of the elevated fuel storage facility and a number of 55-gallon drums around the property. I will not reduce the property from the appraised value as a result of these conditions because, first, the evidence did not establish whether the fuel storage facility or the drums contained toxic or hazardous substances. Second, Cordill testified that it is common and expected that there are fuel tanks and drums containing various substances on farms. According to Cordill, unless he had some reason to believe that they created an environmental hazard, which he did not with the

tanks and drums on the Home Place, their presence would not affect his assessment.

Further, even if I were convinced that these conditions reduced the value of the real property, I would not reduce Cordill's appraisal based on these conditions, because defendant did not present any evidence of the extent to which those conditions would affect value, if at all. Cordill is a very qualified appraiser with extensive experience appraising and making loans for farms similar to and in the same area as the Home Place. There is no evidence on which to base any particular adjustment to that appraised value based on the conditions discussed at trial.

Defendant also argues that I should deduct $10,000 for the cost of remediating the dirty and inadequate septic system. I will not make that reduction, because Cordill testified that he took the condition of the septic system into account in determining value, and I am not convinced that he was unaware of its true condition.

Therefore, I conclude that the Home Place was worth $330,000 as of December 10, 2001.

Defendant asks that, for purposes of valuation for partnership dissolution purposes, the property value be reduced by 8 percent for the cost of sale. Plaintiff argues that reducing the value by costs of sale would be unfair where, as here, defendant intends to retain the property and pay its value. Thus, no sale costs will be incurred.

This adversary proceeding is premised on the dissolution of the partnership when debtor filed bankruptcy in 2001. Debtor should have dissolved the partnership and split the assets at that time; he failed to do so, leading to this litigation. Because, in a partnership dissolution, the partnership property is liquidated and the net proceeds split between the partners, I will consider costs of sale in determining the value of debtor's partnership interest. I used that approach in valuing the personal property, and I will use that approach in valuing the real property.

There is no evidence of the costs of sale. Based on my experience in presiding over cases involving the sale of farm property, I conclude that the costs of sale would likely be 5

percent. Therefore, I will reduce the $330,000 by 5 percent ($16,500), for a net value to the partnership of $313,500.

Defendant also argues that I should reduce the total amount awarded to plaintiff by the amount of Conservation Reserve Program (CRP) contracts attributable to the Home Place property that I included in my calculation of the value of the partnership personal property. He argues that, because CRP payments are based on continued ownership of the property, it would be wrong to include CRP contracts as partnership assets, if the partnership is considered to have sold the underlying property.

I need not decide whether the partnership assets should include both CRP payments for the Home Place and the Home Place real property. In my ruling on Phase 2 of this trial, in which I determined the value of the partnership's personal property, I did not attribute any value to CRP contracts 304 and 320, because the contracts provided zero percent share to the partnership. Letter Ruling dated March 29, 2007 at 6. My review of the testimony from that phase of the trial, including testimony from defendant, indicates that Contract 320 was for the Home Place. There were no other CRP contracts for the Home Place. Therefore, no CRP payments attributable to the Home Place were included in the calculation.

Defendant argued at trial that I had included $10,599.16 for Home Place CRP contracts. Defendant is mistaken. That figure is one-half of $21,198.32, which was the value of the CRP payments for a different property, the A&K Ranches property. Phase 2 Exhibit 135 at 5.

Defendant does not dispute that any encumbrances against the Home Place were taken into account in determining the value of the partnership's personal property. Therefore, there are no encumbrances to be deducted from the value of the real property.

I conclude that the net value of the Home Place, which was partnership property, was $313,500 as of December 10, 2001. Plaintiff is entitled to one-half of that amount, or $156,750, in addition to the $29,920 that is his share of the value of the partnership personal property. In compensation for the delay in winding up the partnership, plaintiff has elected to receive interest on that sum rather than one-half the net custom hire income generated by the partnership. Interest will be calculated on the personal property beginning April 1, 2002, which is the date I previously determined was a reasonable time for the

Joseph Field
Paul Bocci
October 24, 2007
Page 5

partnership to wind up.  I will use a different date for the
commencement of interest on the real property portion of the
assets, however, because Cordill testified that it would take
between 12 and 18 months to sell property of this type.  I
conclude that interest on the $156,750, which represents
defendant's interest in the real property, will begin to run as
of April 1, 2003.

    I also previously indicated that defendant should have an
opportunity to pay the value of the assets rather than have the
property sold.  Defendant has elected to do that.  The parties
stipulated at trial as to the structure of the judgment and the
interest rate.  Mr. Field should prepare a judgment consistent
with that stipulation.  In the event the balance is not paid in
full by July 1, 2008 (which is the date the parties agreed to as
the outside payment date), plaintiff may execute on the
partnership assets, with all proceeds after costs of sale first
being paid to plaintiff to satisfy the sums due to him under the
judgment.

                                                Very truly yours,

                                               ELIZABETH L. PERRIS
                                               Chief Bankruptcy Judge