Below is an Opinion of the Court.

_Elizabeth L Perris_
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) |
| | ) Bankruptcy Case No. |
| CARSTEN VON BORSTEL | ) 01-42235-elp7 |
| | ) |
| ——————————————————— | ) |
| | ) |
| JIM O'HAGAN, as successor in | ) Adversary No. 03-3523 |
| interest to Michael A. Grassmueck, | ) |
| Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) |
| THEODORE VON BORSTEL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

On December 5, 2007, this court entered a judgment in favor of plaintiff James O'Hagan for more than $186,000 on his complaint for partnership dissolution and accounting. Debtor Carsten von Borstel was a partner in the partnership on the date he filed his bankruptcy petition. The judgment was the result of a trial that was held in three phases over the course of nearly a year, each phase of which was followed by a

Page 1 -  MEMORANDUM OPINION

written decision.

Plaintiff now moves to set aside the judgment, alleging that the judgment was obtained by fraud. He seeks to amend the complaint to pursue additional assets that he claims belonged to the partnership but were concealed during the discovery and trial of the original complaint.

For the reasons set out below, I will deny plaintiff's motion.

BACKGROUND

Debtor Carsten von Borstel ("debtor") filed a chapter 7 petition on December 10, 2001. At the time of filing, he was a partner in DvB & Sons, a partnership consisting of debtor, his father, and one brother. In 2003, the chapter 7 trustee filed an adversary complaint against defendant Theodore von Borstel ("defendant" or "Ted"), the remaining partner in DvB & Sons, seeking a partnership dissolution and accounting of partnership assets as of December 10, 2001, the date of debtor's bankruptcy petition and therefore the date the partnership was dissolved. When the trustee proposed to settle the litigation, James O'Hagan ("plaintiff"), a creditor of the estate, objected, and ultimately purchased the trustee's interest in the case. The trustee retained, for the estate, a 15 percent interest in any recovery plaintiff obtained in this litigation. Mr. O'Hagan was substituted as the plaintiff in this adversary proceeding in 2005.

The court held the trial on the complaint in three phases: Phase 1 - real property; Phase 2 - personal property; and Phase 3 - valuation of DvB & Sons' net equity in real property known as the Home Place. After each phase of the trial, the court issued a written ruling setting out findings and conclusions.

Page 2 -  MEMORANDUM OPINION

After the trial on Phase 2, the court reconsidered its Phase 1 determination that the partnership had no ownership interest in real property known as the Home Place, and determined that the partnership in fact did have an interest in the property.  Plaintiff moved for reconsideration and for leave to amend the complaint, arguing that the court erred in determining that the partnership did not also have an interest in property known as the Bake Oven property, based on his theory that a sale of Bake Oven to Don Phillips in 1991 was a sham.  He also argued that the partnership actually owned property that it had leased from Robert Larsell until 2001.  He claimed that a sale of the property by Robert Larsell to A&K Ranches in 2001 was actually a sale of DvB & Sons' interest in the property for significantly less than the true value of the property.  Plaintiff sought to amend the complaint to add fraudulent transfer claims relating to the Bake Oven and Robert Larsell properties.

The court denied the motions, explaining that the "new" evidence on which plaintiff relied for his motions was known to him before Phase 1 of the trial began, and that both the Bake Oven and Robert Larsell properties were addressed in the Phase 1 ruling.

After the ruling on Phase 3 of the trial, in which the court determined the value of the Home Place, plaintiff again filed a motion to amend the findings, again arguing that the Bake Oven property was actually held by Phillips for the benefit of the partnership, and that the partnership had actually purchased the Robert Larsell property in 1979 and then fraudulently transferred it to A&K Ranches shortly before debtor's bankruptcy in 2001.  The court denied the motion to amend the

findings.  The court entered the judgment on December 5, 2007.

Plaintiff appealed the judgment, arguing among other things that the court erred in its determination about ownership of the Bake Oven and Robert Larsell properties, and in failing to amend the findings.  The Bankruptcy Appellate Panel affirmed on July 11, 2008.

In January 2010, the trustee filed a Final Report, stating that all assets of debtor's estate had been administered.  Plaintiff objected.  He said that he had obtained additional evidence through discovery in a related proceeding that supported his earlier theories about the Bake Oven and Robert Larsell properties, and that debtor's interest in the partnership's interest in those properties was an additional asset that the trustee should administer.  He also filed a motion to reopen the adversary proceeding, arguing that the court had failed to administer assets of the estate, specifically a lease of the Robert Larsell property.  Plaintiff argued that, contrary to the testimony at the trial, the partnership actually continued to lease the property after it was sold to A&K Ranches, and the value of the lease should have been administered as an asset of the estate.

The court denied the motion to reopen.  It explained that, in valuing the partnership interest, it had taken into account income generated after 2001 from the use of partnership property for farming operations on the Robert Larsell property, which had been sold to A&K Ranches.  Plaintiff had not provided any evidence that the amount of income that would have been generated if, as plaintiff asserted, there was a lease, was any different than the amount of income generated from farming operations conducted pursuant to a custom hire agreement.

Page 4 -  MEMORANDUM OPINION

1     The court continued the hearing on the trustee's final report,

2   however, because there was a pending appeal of an arbitration award

3   relating to plaintiff's dispute with his former lawyer with regard to the

4   lawyer's representation of plaintiff in the trial of this adversary

5   proceeding and the outcome of that fee arbitration appeal potentially had

6   an impact on the bankruptcy estate, because a reduction in the fee would

7   increase the net recovery, in which the estate had an interest.

8       Plaintiff then began requesting examinations under Fed. R. Bankr. P.

9   2004 of various entities and individuals, pursuing his theory that the

10  partnership had an interest in the Bake Oven and Robert Larsell

11  properties, which interests were allegedly an additional asset of

12  debtor's bankruptcy estate that should be administered.  Plaintiff had

13  obtained additional evidence in the related proceeding that led him to

14  believe that additional evidence could be found to support his theories.

15  In light of the history of this adversary proceeding, including the

16  court's view that defendant's and debtor's testimony at the trial in this

17  case was less than forthright, that they failed to provide supporting

18  evidence for some of their assertions about ownership or leases of

19  certain parcels of property, that some of their explanations about the

20  partnership assets seemed to change depending on what approach would be

21  advantageous at a particular time, and that the testimony and evidence

22  often revealed odd aspects of various transactions, the court ordered

23  numerous Rule 2004 examinations on plaintiff's motions over the past nine

24  months.  Through use of the Rule 2004 examinations, plaintiff has

25  obtained documents and examined numerous individuals in pursuit of his

26  theory that the partnership, with the help of Don Phillips, Robert

Case 03-03523-elp   Doc 253   Filed 02/03/11

Larsell, and the principals of A&K Ranches, engaged in fraud in the 1991 sale of the Bake Oven property to Phillips and in the 2001 sale of the Robert Larsell property to A&K Ranches.

Plaintiff again moves to set aside the judgment so he can amend the complaint to assert various claims relating to those two properties. For the reasons described below, I will deny his motion. I conclude that plaintiff has not established that he is entitled to set aside the three-year-old judgment.

DISCUSSION

1. <u>Effect on estate</u>

Before plaintiff filed this motion to set aside the judgment, the court advised plaintiff that, if he sought to set aside the judgment and amend the complaint, he would need to explain in his motion how his success on any of the new claims he seeks to assert would result in an increase in the value of debtor's bankruptcy estate. <u>See</u> Case No. 01-42235, Docket #277. Plaintiff did not provide any such explanation in his motion.

However, as I understand it, plaintiff's theory is that the Bake Oven and Robert Larsell properties should be considered assets of DvB & Sons. Additional assets of DvB & Sons could increase the value of debtor's interest in the partnership, which is an asset of debtor's bankruptcy estate. Therefore, I conclude that success on the fraud claims could have an effect on the outcome of this adversary proceeding, if the judgment were to be set aside and the complaint amended.

2. <u>Motion to set aside judgment</u>

Fed. R. Bankr. P. 9024 provides that, with exceptions not relevant

Page 6 - MEMORANDUM OPINION

here, Fed. R. Civ. P. 60 applies in bankruptcy cases.  Rule 60 provides, as relevant:

> (b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> . . . .
>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]
>
>> . . . .
>
> (d) This rule does not limit a court's power to:
>
>> . . . .
>
>> (3) set aside a judgment for fraud on the court.

Although the basis for plaintiff's motion is not entirely clear, from his arguments I conclude that he claims the judgment should be set aside because of (1) newly discovered evidence about ownership of the Bake Oven and Robert Larsell properties; (2) fraud by defendant; (3) fraud by non-parties, including debtor; and (4) fraud on the court by debtor, defendant, Phillips, and the principals of A&K Ranches.

A.  <u>Standing</u>

Phillips challenges plaintiff's standing to move to set the judgment aside, because plaintiff prevailed in obtaining a judgment against defendant in this litigation.  He argues, without citing authority, that only a party against whom a judgment has been obtained can use Rule 60 to set the judgment aside.

Fed. R. Civ. P. 60(b) provides that "the court may relieve a party

or its legal representative from a final judgment" for certain specified reasons, including newly discovered evidence or fraud. The rule does not say that "a losing" party may obtain relief; it says "a" party. Thus, a prevailing party may use Fed. R. Civ. P. 60(b) to seek to set aside a judgment on the ground that the judgment should have provided additional relief. See U.S. ex rel. Familian Nw., Inc. v. RG & B Contractors, Inc., 21 F.3d 952 (9th Cir. 1994) (considering Rule 60(b) motion filed by successful litigant who discovered after judgment was entered that it had overlooked certain invoices, which would have increased the amount of judgment).

Fed. R. Civ. P. 60(d)(3) provides that the rule "does not limit a court's power to set aside a judgment for fraud on the court." Again, the rule does not require that the party seeking to set the judgment aside for fraud on the court have been the losing party.

I conclude that, although plaintiff obtained a judgment in his favor, he nonetheless has standing to seek to set aside the judgment to obtain additional relief.

B. Timeliness

Phillips and A&K Ranches next argue that plaintiff's motion should be denied as untimely. Rule 60 includes deadlines for filing motions to set aside a judgment. Motions under Fed. R. Civ. P. 60(b) "must be made within a reasonable time," and motions based on Fed. R. Civ. P. 60(b)(2) or (3) – newly discovered evidence or fraud by an opposing party – must be made within one year after entry of the judgment. Fed. R. Civ. P. 60(c)(1). On the other hand, a motion under Rule 60(d)(3) to set aside a judgment for fraud on the court is not subject to the same "reasonable

Page 8 - MEMORANDUM OPINION

time" limit.  Thus, a motion to set aside a judgment for fraud on the court may be made at any time.  11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2870 at 412 (2d ed. 1995).

The judgment in this case was entered in December 2007.  This motion was filed three years later.  Thus, to the extent plaintiff seeks to have the judgment set aside because of either newly discovered evidence or fraud by defendant that did not constitute fraud on the court, the motion to set aside the judgment is untimely.[1]  E.g., In re Lopez, 2008 WL 5157675 (Bankr. D. N.M. 2008) (Rule 60(b)(3) motion filed more than a year after entry of judgment was untimely).

Plaintiff also alleges fraud by non-parties, in particular Don Phillips, Robert Larsell, and the principals of A&K Ranches.  A motion to set aside a judgment based on fraud by a non-party is governed by Rule 60(b)(6), which allows the judgment to be set aside for any reason that justifies relief.  A motion under Rule 60(b)(6) must be made within a reasonable time; there is no fixed time limit.  Fed. R. Civ. P. 60(c)(1); McKinney v. Boyle, 404 F.2d 632 (9th Cir. 1968).

In determining whether a Rule 60(b)(6) motion was brought within a reasonable time, the court should consider "'the interest in finality, the reason for delay, the practical ability of the litigant to learn

---

[1]  Rule 60(b)(6) and the reasons set out in Rule 60(b)(1) through (5) are mutually exclusive.  If the reason for setting aside the judgment is one of the listed reasons in (1) through (5), a party may not rely on Rule 60(b)(6) for relief.  Therefore, unless any fraud by defendant rises to the level of fraud on the court, for which there is no time limit, plaintiff's motion based on alleged fraud by defendant is untimely.

Page 9 –  MEMORANDUM OPINION

earlier of the grounds relied upon, and prejudice to other parties.'"  In re Williams, 287 B.R. 787, 793 (9th Cir. BAP 2002) (quoting Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981)).  When the time for filing an appeal of the judgment has expired, "the interest in the finality of judgments is to be given great weight to determining whether a FRCP 60(b)(1) motion is filed within a 'reasonable time.'"  Williams, 287 B.R. at 793.

        Plaintiff has been asserting the same basis for challenging the court's judgment since at least early 2007.  The judgment became final and was affirmed on appeal in 2008.  Nonetheless, it has taken an extreme effort by plaintiff to obtain the evidence upon which he relies for his theories, given the resistence of defendant, debtor, and the third parties.  Debtor and defendant have not always been forthcoming with the court, and have not readily provided the information that plaintiff sought.  Plaintiff has been working at obtaining this evidence for more than three years, and it has been a difficult path for him to travel without counsel.  Therefore, to the extent plaintiff relies on Rule 60(b)(6), fraud by third parties, I will not deny the motion as untimely.

        To the extent plaintiff seeks to set aside the judgment for fraud on the court, there is no time limit on a motion under Rule 60(d)(3).

        Therefore, I conclude that plaintiff's motion under Rule 60(b)(2) or (3) is untimely to the extent it relies on newly discovered evidence or alleged fraud by defendant (except to the extent it might constitute fraud on the court), but is timely to the extent it relies on fraud by

Case 03-03523-elp   Doc 253   Filed 02/03/11

third parties (Rule 60(b)(6)), or fraud on the court (Rule 60(d)(3)).[2]

C. **Has plaintiff established a basis for setting aside the judgment?**

Plaintiff's motion is timely only to the extent it seeks to set aside the judgment (1) based on fraud by non-parties (Rule 60(b)(6)) or (2) based on fraud on the court (Rule 60(d)(3)). Therefore, I will limit my discussion to those two arguments.

In order to prevail on a motion under Rule 60(b)(6) to set aside a judgment based on fraud by non-parties, plaintiff needs to show that there are extraordinary circumstances justifying relief. RG & B Contractors, Inc., 21 F.3d at 956. The rule is to be "'used sparingly as an equitable remedy to prevent manifest injustice.'" Lehman v. United States, 154 F.3d 1010, 1017 (9th Cir. 1998) (quoting United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993)).

In order to prevail on a motion under Rule 60(d)(3) to set aside the judgment based on fraud on the court, plaintiff must establish fraud on the court by clear and convincing evidence. England v. Doyle, 281 F.2d 304, 309-310 (9th Cir. 1960). Fraud on the court requires more than common law fraud. Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp., 71 F.3d 44, 48 (1st Cir. 1995). "Fraud on the court" is construed narrowly.

---

[2] A&K Ranches raises the possibility that plaintiff is relying on the portion of Fed. R. Bankr. P. 9024 that provides that "a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c)[.]" Fed. R. Bankr. P. 9024(1). It does not appear that plaintiff is relying on that provision, which in any case would not apply, because debtor's bankruptcy case, Case No. 01-42235-elp7, was still open at the time plaintiff filed his motion.

Page 11 - MEMORANDUM OPINION

It is "'reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata.'" Appling v. State Farm Mutual Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003) (quoting United States v. Beggerly, 524 U.S. 38, 46 (1998)). The Ninth Circuit has adopted the definition of "fraud on the court" provided by Professor Moore:

> "'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989) (quoting 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.33 (2d ed. 1978)). It "includes both attempts to subvert the integrity of the court and fraud by an officer of the court." In re Intermagnetics Am., Inc., 926 F.2d 912, 916 (9th Cir. 1991). The moving party must "show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." England, 281 F.2d at 309. "Non-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court." Appling, 340 F.3d at 780.

Plaintiff alleges fraud in transactions between DvB and Sons and Don Phillips (with regard to the sale of the Bake Oven property) and between Robert Larsell and A&K Ranches (with regard to the purchase of the Robert Larsell property). Plaintiff does not specify which Rule 60 theory he relies on for his different arguments. Therefore, I will attempt to consider both theories to the extent each could be applicable.

Before I discuss plaintiff's theories and the evidence he presents,

I note that plaintiff's presentation of the evidence makes his claims of
fraud very difficult to assess. First, much of the evidence is neither
specifically identified nor authenticated, other than to say that it was
obtained from a particular source. Individual exhibits are often made up
of multiple pages, which may or may not be from the same source document.
Further, plaintiff does not, with limited exceptions, pinpoint where in a
particular exhibit to find the information on which he relies to reach
his conclusions. Nor do the exhibits necessarily show the connections to
support the conclusions he reaches from the evidence.

Further, some of the exhibits purport to be accountings (e.g., PL6BO
through PL11BO), but it is not apparent who produced the accountings or
specifically where the information contained in the documents came from.
Documents that purport to support the accountings are included as part of
each exhibit, but plaintiff does not explain where the numbers on the
accounting come from in any way that would allow the court to track the
numbers and reach the same conclusions from the evidence that plaintiff
reaches.

Despite the difficulties with the evidence as provided, I have
endeavored to understand the exhibits and to track the connections
plaintiff describes in his declaration. Having reviewed the documents
and plaintiff's explanations and arguments, I cannot conclude that the
evidence supports the conclusions that plaintiff reaches. I do not see
evidence that the judgment was obtained through a pattern of fraud by
third parties or fraud on the court, as would be required to justify
setting aside the three-year-old judgment.

Plaintiff focuses primarily on two properties, arguing that there

1  was fraud in both the original transactions involving those properties,

2  and in the presentation of evidence about the transactions to the court

3  in relation to this partnership accounting.  Fraud in the original

4  transactions is irrelevant to whether the judgment in this case was

5  obtained through fraud.  Although plaintiff seems to argue that there was

6  collusion in the property transactions, undertaken to keep the property

7  from the hands of creditors of DvB & Sons, I do not see how this type of

8  fraud, if it occurred, constitutes fraud, either by third parties or on

9  the court, relating to the bankruptcy case of debtor Carsten von Borstel,

10  that was perpetrated to obtain the judgment in this adversary proceeding.

11  Nonetheless, I will discuss the evidence presented to determine whether

12  it would support setting aside the judgment because the judgment was

13  obtained by fraud.

14          a.   Bake Oven property

15      DvB & Sons, the partnership of which debtor was a partner, owned the

16  Bake Oven property before the partnership filed a chapter 12 bankruptcy

17  petition in 1989.  In 1991, pursuant to a confirmed plan of

18  reorganization, all of the partnership's real and personal property

19  (including the Bake Oven property) was sold to Don Phillips on an

20  installment agreement.  The plan required an installment contract

21  pursuant to which Phillips was to pay the partnership the amounts due to

22  creditors under the plan, and the partnership was to use the Phillips

23  payments to pay the creditors.

24      Plaintiff theorizes that the sale to Phillips was a sham, that

25  Phillips never paid for the property, and that in fact the partnership

26  continued to own the Bake Oven property after the purported sale to

Page 14 - MEMORANDUM OPINION

Phillips. Therefore, according to plaintiff, the value of the partnership as of its dissolution in 2001 should include the value of the Bake Oven property.

Plaintiff argues that, contrary to the requirements of the confirmed chapter 12 plan, DvB & Sons actually paid the obligations that Phillips was supposed to pay, and also advanced to Phillips whatever funds Phillips actually did use to pay DvB & Sons' obligations. Plaintiff claims that there was a conspiracy to defraud creditors of the DvB & Sons bankruptcy estate that included defendant, debtor, and Phillips, and that the conspiracy continued into debtor's bankruptcy case.

To prove his theory, plaintiff primarily relies on evidence that he claims shows that (1) the obligations of DvB & Sons that Phillips was supposed to pay were in fact current, contrary to the representations in the partnership's chapter 12 documents; (2) the partnership had sufficient Conservation Reserve Program ("CRP") funds and emergency loans to pay its obligations, so Phillips did not actually have to pay anything for the property; and (3) DvB & Sons made payments to Phillips in excess of the amounts Phillips paid on DvB & Sons' obligations, effectively advancing Phillips the money to pretend to purchase the property. According to plaintiff, all of this evidence shows that Phillips did not really purchase the Bake Oven property, but merely took title for the benefit of DvB & Sons to keep the property from the partnership's creditors.

I have carefully reviewed both plaintiff's "declaration," which is in reality mostly argument about what his exhibits purport to show, and all of the exhibits he submitted relating to the Bake Oven property. The

Page 15 - MEMORANDUM OPINION

evidence shows that, in 1991 in connection with DvB & Sons' chapter 12 plan, Phillips agreed to purchase all of the partnership's property, both real and personal, on an installment agreement under which Phillips would pay to DvB & Sons amounts necessary for the partnership to pay its obligations as outlined in the plan. It also shows that DvB & Sons made payments to Phillips over a number of years. Further, there is evidence that the partnership anticipated receiving approximately $177,000 in CRP payments annually going forward.

The evidence does not show either that the sale to Phillips was a sham and that DvB & Sons in fact retained the beneficial interest in the Bake Oven property, or that the judgment excluding the Bake Oven property from the value of DvB & Sons' partnership assets was obtained by fraud.

The sale agreement with Phillips referenced in Exhibit PL2BO was to require Phillips to pay DvB & Sons' obligations. It also provided that Phillips's purchase included DvB & Sons' personal property, which logically would include the CRP payments. If, as debtor testified in his deposition, Phillips used the CRP payments to meet the obligations of DvB & Sons that he was required to pay under the installment agreement, that does not show fraud. It shows that Phillips upheld his obligations under the purchase agreement, but paid DvB & Sons' obligations directly rather than paying DvB & Sons and having DvB & Sons in turn pay its obligations. The fact that he may have used CRP payments to meet those obligations does not show fraud; he was entitled to those payments due to his purchase of the personal property of DvB & Sons.

Plaintiff insists that DvB & Sons' obligations were current as of the date of the sale to Phillips, so there were really no obligations to

Page 16 - MEMORANDUM OPINION

pay. Exhibit PL1BO, a Loan Modification Agreement dated April 4, 1987, shows a number of obligations of the partnership, many of which do not show the total balance owing. This exhibit indicates that the partnership had obtained a certification of eligibility for a disaster loan of $142,000, and provided that the partnership would give a security interest in all future CRP payments and that those payments would be sent to the partnership's attorney. The attorney was to use the CRP funds to make the payments on the obligation to the Federal Land Bank.

Exhibit PL2BO is an attachment to the partnership's modified chapter 12 plan, which shows the amount of the obligations DvB & Sons owed as of December 31, 1989. Although plaintiff argues that these amounts are not accurate, because there was enough money from the disaster loan (referenced in Exhibit PL1BO) and CRP payments to bring all of those obligations current, he provides no evidence that in fact either the disaster loan or the CRP payments were used to pay the obligations. He has not established that the amounts set out in Exhibit PL2BO are inaccurate, let alone fraudulent.

The exhibits do show that DvB & Sons had ongoing obligations on many of the loans, so even if the payments were current at the time Phillips purchased the Bake Oven property, there were continuing obligations to be paid related to that property.

As to plaintiff's argument that DvB & Sons advanced Phillips the money to pay the obligations pursuant to the sale agreement, plaintiff's evidence is either incomplete or does not necessarily lead to the conclusion plaintiff draws from it. Plaintiff points to Exhibit PL2BO, which shows that Phillips was to make a $70,000 payment to the Farm

Page 17 - MEMORANDUM OPINION

Credit Bank of Spokane on January 1, 1991.  Exh. PL2BO at Bates No. 00394.  He then points to Exhibit PL6BO, which shows a $70,000 payment apparently from DvB & Sons to Phillips on October 17, 1986.  Plaintiff claims that Phillips kept those funds in an account until they were needed to make the 1991 payment to the Farm Credit Bank.

There is no evidence about why DvB & Sons paid Phillips $70,000 in 1986, or what Phillips did with the $70,000 after he received it.  There is no evidence to support a conclusion that DvB & Sons was engaged in a fraudulent scheme as early as 1986 to give Phillips the money he would need five years later to make the payment.

I do not find that the evidence plaintiff provides supports the theory he espouses.  Plaintiff's explanation of the evidence and how it ties together to show fraud is confusing and imprecise, and despite my sincere efforts, I do not see how the evidence establishes fraud in the transaction, let alone fraud in obtaining the judgment in this bankruptcy adversary proceeding to dissolve the partnership and provide an accounting of partnership assets.

Plaintiff has held his theory that there was collusion with regard to the 1991 transfer of the Bake Oven property since at least 2007.  Despite having pursued evidence of this theory for more than three years, the evidence he presented with this motion does not establish that there was fraud in that transaction, or fraud by third parties in the trial of this adversary proceeding.  There is certainly not clear and convincing evidence of fraud on the court with regard to the Bake Oven property.  I will deny the motion to set aside the judgment as to the Bake Oven property.

Page 18 - MEMORANDUM OPINION

b.   <u>A&K Ranches</u>

     DvB & Sons farmed property that it leased from Robert Larsell.  The
lease included a right of first refusal in the event Larsell had a buyer
for the property.  In 2001, Larsell sold the property to A&K Ranches for
$825,000, after DvB & Sons failed to exercise its option to purchase
under the right of first refusal.  Shortly after the sale, debtor filed
his bankruptcy petition.

     Plaintiff has three alternative theories with regard to the Larsell
property.

     First, he claims that the transfer to A&K Ranches was a sham.
According to plaintiff, DvB & Sons actually purchased the property from
Robert Larsell in 1979 for $1.2 million, but feigned a lease on the
property while making installment payments toward its purchase.
Plaintiff speculates that, by 2001, DvB and Sons had paid the purchase
price down to $825,000.  In order to keep debtor's share of the
partnership's interest in the property out of debtor's bankruptcy estate,
the principals of DvB & Sons colluded with the principals of A&K Ranches
to transfer the property, which plaintiff alleges was worth at least $3
million, from Robert Larsell to A&K Ranches for $825,000.

     The evidence presented does not support this theory.  Exhibit PL1AK
shows that DvB & Sons contemplated purchasing the Larsell property in
1979 for $1.2 million and that the partnership was interested in renting
the property if it did not purchase it.  There is no evidence that DvB &
Sons ever actually purchased the property.

     Exhibit PL2AK is a lease under which DvB & Sons leased the property
from Larsell beginning in 1982.  The lease ran for three years,

Page 19 - MEMORANDUM OPINION

continuing on a year-to-year basis thereafter if neither party terminated it. Under the lease, DvB & Sons was entitled to 67 percent of the income from crops on the property, and Larsell was entitled to 33 percent. DvB & Sons was given a first refusal option to purchase the property if Larsell wanted to sell it to a bona fide purchaser.

Plaintiff relies primarily on two alleged facts for his theory that DvB & Sons actually purchased the Larsell property in 1979 rather than leasing it in 1982. First, he says that CRP payments were made for the farming operations on the Larsell property, and that those payments do not appear in DvB & Sons' financial records. From this absence, plaintiff concludes that the payments were in fact going to Larsell to be applied toward the purchase price. Second, he relies on the fact that Larsell sold the property to A&K Ranches in 2001 for $825,000, which plaintiff asserts is significantly below the actual market value of the property, which he claims was $3 million. Plaintiff theorizes that DvB & Sons had Larsell sell the property in 2001 to shield it from creditors of debtor (debtor filed his bankruptcy petition shortly after the sale) and that the $825,000 was the outstanding balance of the 1979 purchase price.

Plaintiff did not provide any evidence to support either of these alleged facts. There is no evidence that DvB & Sons actually purchased the property in 1979. There is no documentation to support plaintiff's statement that CRP payments for the Larsell property were not included in DvB & Sons' financial records. Further, there is no evidence that DvB & Sons had anything to do with the Larsell/A&K Ranches sale, or that the $825,000 purchase price was the balance remaining on a 1979 sale of the property. The fact that the sale was conditioned on entering into an

operational lease with defendant Ted von Borstel does not show that DvB & Sons or debtor or even defendant were involved in structuring the sale transaction.

Second, plaintiff argues that DvB and Sons' failure to exercise the right of first refusal that is included in the 1982 lease of the property was a fraudulent transfer of the option to A&K Ranches.

There was no transfer of the right of first refusal from DvB & Sons to A&K Ranches, which is the underpinning for plaintiff's theory that DvB & Sons' failure to exercise the option was a fraudulent transfer of that right. A&K Ranches did not obtain the right of first refusal; it purchased the real property when DvB & Sons failed to exercise its right to purchase the property. That terminated the right of first refusal.

Plaintiff's fraudulent transfer theory is that the property was actually worth $3 million at the time of the sale in 2001, and that DvB & Sons gave up $2,175,000 in value (the difference between the market value and the sale price) by failing to exercise the option.

Even assuming the accuracy of the appraisals plaintiff submitted as evidence, he did not submit any evidence that DvB & Sons had the financial ability to exercise the option to purchase the property for $825,000. The evidence does not support plaintiff's theory that the failure to exercise the option was a transfer or was fraudulent.

Finally, plaintiff argues that DvB & Sons continued to lease the Larsell property after the 2001 sale to A&K Ranches. The denial of the lease by the principals of A&K Ranches, plaintiff argues, was necessary to their claim that the purchase from Larsell was an arms-length transaction.

Page 21 - MEMORANDUM OPINION

The sale agreement between Larsell and A&K Ranches is conditioned on A&K Ranches entering into an operating lease with defendant. There is evidence showing that defendant continued to live on the Larsell property after its sale to A&K Ranches. Defendant testified that he personally leased the property from A&K Ranches after the sale; the principals of A&K Ranches have denied that there was a lease, claiming that defendant farmed the property under a custom farming agreement.

The evidence is ambiguous as to the business relationship between A&K Ranches and defendant after Larsell sold the property to A&K Ranches in 2001. What is clear is that defendant continued to farm the property after the sale. The judgment in this adversary proceeding took into account payments that defendant received on what was described at the trial as a custom farming agreement. If there was a lease, as plaintiff claims, DvB & Sons might have been entitled to their share of any crop or CRP payments received while the property was being farmed by DvB & Sons. Although plaintiff has provided some evidence that someone with the name "von Borstel" was listed as an insured on crop insurance issued for crops planted in 2002, the evidence (Exh. PL10AK) does not indicate either that the "von Borstel" listed is DvB & Sons the partnership or that, as plaintiff argues, the "von Borstel" listed is a shareholder in A&K Ranches.

Plaintiff has not shown that there was fraud in the 2001 sale of the Larsell property to A&K Ranches, or that the judgment in this case was obtained by fraud either by Larsell or the principals of A&K Ranches, or that there was fraud on the court with respect to the Larsell property.

////

Page 22 - MEMORANDUM OPINION

c.   Other arguments

        Plaintiff makes other arguments and other claims of fraud in this
case.  I have considered the evidence he supplied and the arguments he
made, and reject them without further discussion.

        After the hearing on this motion, and without leave of the court,
plaintiff filed a Supplemental Declaration in which he seems to argue
that counsel for Phillips and A&K Ranches engaged in criminal activities
in connection with their pleadings in this case.  There is no support for
such a claim.  Further, the issue in this motion is whether to set aside
the judgment so plaintiff can pursue additional assets of debtor's
bankruptcy estate.  It is not whether plaintiff can bring other claims or
charges against third parties, except to the extent those claims relate
to increasing debtor's bankruptcy estate.

     D.   Conclusion

        As explained above, the court will set aside the judgment in this
case only if the judgment was obtained through the fraud of a third party
(Fed. R. Civ. P. 60(b)(6)) or through fraud on the court (Fed. R. Civ. P.
60(d)(3)).  The court has carefully reviewed the evidence plaintiff
submitted in connection with this motion as well as his explanations of
and conclusions he draws from that and other information, evidence of
which he did not provide to the court.  The evidence submitted shows that
there may have been additional information available at the time of the
trial that might have shed light on the assets of DvB & Sons and
therefore affected the value of debtor's interest in the dissolved
partnership.  The evidence plaintiff presented does not, however,
establish the facts to support plaintiff's theories of fraud.  Even if

there was fraud in the sale of either the Bake Oven property or the Larsell property – and I am not convinced that there was fraud or even that the evidence suggests fraud – plaintiff has not established that the fraud was of the type that would justify setting aside a judgment that was entered more than three years ago. He has not established fraud by third parties or fraud on the court, which would support setting aside the judgment at this late date.

CONCLUSION

The judgment in this adversary proceeding was entered more than three years ago, and has been affirmed on appeal. Entry of a judgment should provide finality to a dispute, particularly after that judgment is affirmed on appeal. Throughout the course of the three-phase trial in this case and thereafter, plaintiff has asserted that defendant, along with others, engaged in a fraudulent scheme to conceal the interest of DvB & Sons in the Bake Oven property and the Robert Larsell property. He has spent years seeking evidence in support of this theory.

Plaintiff has not convinced me that there was fraud that would support setting aside the judgment under either Fed. R. Civ. P. 60(b)(6) or (d)(3). Therefore, the court will enter an order denying his motion for relief from the judgment.

###

cc: James J. O'Hagan
    Paul R. Bocci, Jr.
    Michael Grassmueck, Inc.
    J.R. Perkins III
    Steven H. Corey